## DAVID M. BARR

### *v.*

## BELLE CHANDLER et al.

1. A person who assists one to place his property beyond the reach of his creditors cannot invoke the fraud to be relieved from the legal consequences of his act.

2. Parol evidence is not admissible to vary or contradict the terms of a written instrument, and evidence of fraudulent misrepresentation as to its effect to induce its execution must be clear and convincing to warrant a disregard of its terms.

3. The proceedings and award of persons, professing to act as arbitrators, who are not sworn, acting on unverified statements, and who do not consult together and arrive at their conclusion as the result of conference, is of no legal effect or force.

4. Acquiescence in and performance of the determination of such a body, under impending dispossession and loss of business, threatened by the other party, who is not injured or prejudiced, will not deprive one of rights which may have been disallowed by the so-called arbitration.

On final hearing on bill, answer and proofs taken in open court.

*Mr. Henry G. Clayton,* for the complainant.

*Mr. John F. Hawkins,* for the defendants.

GREEN, V. C.

The complainant, David M. Barr, was the lessee from Mrs. Belle Chandler, the owner, of certain premises at Ocean Grove, consisting of three houses, which were occupied by the complainant, under the name of the Ocean Grove Hygienic Institute, where he carried on his business, which was the care and treatment of invalids.

The rent agreed was $1,867.25, payable on the 15th day of July, August, September, October and November, in varying sums.

Barr v. Chandler.

To secure the payment of the rent a chattel mortgage on a steam engine, boiler, steam pipes, connections, radiators, bath-tubs and bathing arrangements, electrical machines, apparatus and surgical appliances and furniture, was given by the complainant to the defendant.

In 1888 the complainant had erected, at his own expense, alongside of and as part of one of the houses of said institute, an elevator, for the purpose of taking sick patients and baggage to the upper stories. This elevator was on the outside of, but attached to, the Neptune House, the largest of the houses occupied by the complainant.

In July of that year the following paper was signed by the defendant Mrs. Chandler :

"Received, Ocean Grove, June 2d, 1888, of Dr. D. M. Barr, all right, title, claim and interest in the elevator now placed on our house, in consideration of two hundred dollars, rent due on property, and one dollar paid in her hands.

(Signed)        "MRS. KENNARD CHANDLER."

There is no question but that this paper was antedated, nor of the other fact, that at the time it was actually made the elevator had been in fact erected and was attached to the house.

At the time of its execution there was more than $200 rent due from the complainant to Mrs. Chandler.

The complainant has at various times since July, 1888, demanded that an allowance of the amount of this receipt, namely, $200, should be made to him when he has settled for the rent in arrear, but it has been as often disallowed by the defendants, and on their threatening, unless the rent was paid in full, to take proceedings to seize the property of complainant, this bill was filed by him for an injunction to restrain the defendants from interfering with or removing the goods of complainant on account of rent due, unless this amount was allowed; and on the payment by him into court of $367.25, the whole amount of rent accrued to that time, to await the determination of the question in dispute, the defendants were enjoined from disturbing complainant in his possession.

The answer of Mrs. Chandler denies that she, with knowledge of its contents, ever signed such a paper as the one which is set out in the bill of complaint, and the evidence has, of course, been directed, in the first place, to the circumstances under which the paper was executed.

The complainant testifies that it was signed by Mrs. Chandler in his presence; that the $200 named in the receipt were to be applied to the rent which was then due on the property.

Mrs. Chandler, in her examination, states that the paper was executed under the following circumstances:

"I was sitting in our own apartment, our private apartment, in the bay-window, writing, and as I wrote I noticed, on the opposite side of the street, two men; they passed the house once, twice, probably three times, and the manner of their passing attracted my attention so that I stopped my writing and looked out at them; they disappeared, and in a few minutes, probably not more than half an hour afterwards, I heard a knock at our door—I was still standing at the desk with my pen in my hand—and Dr. Barr entered the room, and as he came towards me he appeared to be very much excited, and as he came across the floor he said 'Mrs. Chandler'—I do not remember his exact language, whether he said the sheriff, constable or officers, were in the house, and they would take the elevator; this paper he held in his hand I understood to be a bill, and he said if I would put my name to that bill that that would become possibly a receipt, and that that would save the elevator from the sheriff or constable, and would eventuate on the return of my husband; that that would place it with the chattel mortgage which Judge Black and which my husband held as security for our rent."

And that she immediately signed the paper, and that the doctor departed; that the whole transaction occupied but a few moments.

On re-examination the complainant says:

"The circumstances under which that memorandum of sale was signed were: I was on the porch when the two officers drove up; I received them and invited them into the parlor; the constable had been there before, and I had given him a memorandum of the goods covered by the chattel mortgage and he had retired; I went upstairs to Mrs. Chandler's room and said: 'The sheriff is here to-day; he has a memorandum of the articles on the chattel mortgage, and I am instructed by the constable that he will go through the house and seize anything belonging to me; the elevator is the only article in the house outside of that chattel mortgage that would be subjected to seizure; it cost nearly $400; if you will buy it, I will sell it to you for $200; it will cost you

Barr *v.* Chandler.

no cash money; Mrs. Foster, you know, loaned me $200 with which to put it up, and I gave her a note for one year, and the amount can stand until that note is due and be taken out of the rent;' Mrs. Chandler says, after thinking a little while, 'I will buy it, doctor, but say nothing to my husband about it;' Mrs. Chandler had been sewing, and there was no pen and ink in the room there, and I left her and went to my office and I wrote the receipt and came back to her with the pen in my hand and she signed it, and we went into the presence of the officers; and in the presence of the officers she declared 'everything in the house belongs to me by purchase or by chattel mortgage, and you cannot go through the house unless you go through over my dead body;' then the officers left."

It will be seen that the dispute between parties is, whether this was an absolute sale or whether it was to operate simply as a chattel mortgage; the complainant insisting that the paper is exactly what it purports to be, while the defendant claims that it should not be considered in any other light than as a mere security.

Much stress has been laid upon the circumstances under which this paper was obtained by the complainant from the defendant; that he secured it from her for a fraudulent purpose, at the time the officers of the law were in the house, almost in the act of levying upon his property to satisfy a judgment. I do not see how this is to be used by the defendant to the detriment of the complainant, for there is no question but that he fully advised Mrs. Chandler of his exact situation with reference to the officers of the law, and if his purpose in procuring the transfer, whatever its nature, was to keep the property from the officers, and from his creditors, she, with full knowledge of the facts, in what she did, knowingly and willingly aided and assisted him in effecting his purpose. Of course she is not in a position to avoid the transfer on that account; the only persons who could have so done were creditors, who might have been thereby defrauded, and it is asserted, and not denied, that all creditors at that time, with the exception of the defendant, have been fully paid and settled with by Dr. Barr. The case on this branch of it must turn entirely upon what was the true nature of the transaction itself.

In the first place the paper speaks for itself, and must be construed to be evidence of a sale of the elevator by the complainant to the defendant for the sum of $200, to be credited on rent due

from him to her. It may not be artistically drawn, but it is unambiguous, and its phraseology can admit of no other construction. The well-known rule, that parol testimony is not to be admitted to vary or contradict the terms of a written instrument is invoked, and must govern this branch of the case, unless the paper can be successfully impeached on the ground of fraud, which, of course, in this case involves misrepresentation. There was no fraud, so far as the amount named therein is concerned, because the elevator, it appears by the uncontradicted testimony, cost double the amount for which it was transferred; the only misrepresentation which is alleged is as to the effect of the instrument.

Upon the question of misrepresentation as to the effect of the paper, whether it was to stand as security or was in fact a purchase, the complainant is sustained and corroborated by the testimony of Judge James Black, of Lancaster, Pennsylvania, who says that he is acquainted with the parties, and that he was, in the summer of 1888, at Ocean Grove, at the institute of the complainant, and there had a conversation with Mrs. Chandler in reference to an elevator in the building. That she then said :

" In speaking of the kindness which she and her husband had extended to Dr. Barr recently, when he was in trouble by an officer of the law, a sheriff or some other officer being upon the premises for the purpose of making a levy on any of his goods they might find, that he came in great distress to her and asked her to purchase the elevator which he had erected, and that she did purchase it."

It is claimed that the payment by the complainant of rent falling due subsequent to the transaction without deduction is evidence that it was not of the character he now claims. If he had so paid, without effort to have the deduction made, it might be open to such criticism. But he says that he promised not to ask for the allowance of the amount until a note he had given to a Mrs. Foster came due, and that the other payments were made because defendant had seized the goods, and such payment was necessary to prevent the destruction of his business enterprise.

The weight of evidence on this part of the case is, that the transaction was really a purchase by Mrs. Chandler of the ele-

Barr v. Chandler.

vator in question for the sum of $200, which was to be allowed to complainant upon his rent.

It is claimed, however, on the part of the defendant, that the complainant cannot ask for an allowance of this amount, because there has been a settlement of all matters in dispute between them, in which this question was brought up and disallowed.

It appears by the evidence that the dispute between the parties gave rise to an agreement by them to submit the matters in dispute to certain gentlemen—Mr. Evans, Mr. Brown and Dr. Stokes.

The complainant says that he agreed to submit to the determination of these three gentlemen. Mr. Evans, however, refused to act, and it appears that Mr. Beadle was, at the request of the defendant Mrs. Chandler, substituted in his place. This so-called arbitration met but were not sworn. The parties appeared before them but were not sworn. Before the proceedings had terminated, one of the gentlemen, Mr. Beadle, found it necessary to leave, and did take his departure. The arbitrators did not consult together with reference to their determination; they made no award in writing, and nothing of that character was ever signed by them until some time afterwards, when, at Mrs. Chandler's dictation, a certain statement was written out by one of the parties and signed by them.

It is scarcely necessary to cite authorities, or to go into any argument, to prove that this so-called arbitration and award can have no binding force or effect in law.

It is claimed, however, by the defendants, that the complainant accepted and has executed it; that it was the determination of the two arbitrators who remained, that the defendant should allow the complainant to continue in the possession of the property, and not take any steps to dispossess him, on his paying the amount of rent due or securing it by giving his note, with a responsible endorser, and that the complainant accepted this proposition by giving such note, with a satisfactory endorser, and has since paid the note.

The force of this contention is successfully broken by the fact, insisted upon by the complainant, that he gave such note, with

an endorser, because the defendants at the time were threatening to seize his property and dispossess him, which would have resulted in the complete ruin of his business and business prospects.

His giving the note, with an endorser, entailed no loss upon the defendants, nor did it prejudice them in any way. Acquiescence, to operate as an estoppel, should be the free act of a party, not forced by the other by threats of ruin which he is in a position to make effective, or the act should result in some loss or damage to the other party. *2 Pom. Eq. Jur.* § *965; Hart* v. *Kennedy, 2 Dick. Ch. Rep. 51.*

I am of opinion that the transaction in controversy between the parties was in fact a sale of the right, title and interest of the complainant in the elevator, and that he is entitled to be allowed the sum of $200 upon the rent due for the premises.